## AFFIDAVIT

I, Christina Rosen, being duly sworn, hereby depose and state as follows:

### INTRODUCTION & AGENT BACKGROUND

1. I am employed as a Special Agent with the United States Department of Labor, Office of Inspector General, Office of Investigations ("DOL OIG") in Boston, Massachusetts. My responsibilities as a Special Agent with DOL OIG include investigating fraud, waste and abuse of Department of Labor programs, employees, and departments. I have been employed by the United States government as a Special Agent since October 2007. I am a graduate of the Criminal Investigator Training Program of the Federal Law Enforcement Training Center in Glynco, Georgia, and have received extensive training in criminal investigation procedures and criminal law. In 2005, I graduated from Northeastern University with a Bachelor's degree in Criminal Justice. In 2006, I graduated from Boston University with a Master's degree in Criminal Justice.

2. I am currently investigating DEVIN SMITH ("SMITH") for his involvement in wire fraud and aggravated identity theft, in violation of 18 U.S.C. §§ 1343 and 1028A (the "TARGET OFFENSES").

3. I make this affidavit in support of an application for a criminal complaint charging SMITH with the TARGET OFFENSES and a warrant for SMITH's arrest.

4. Based on the facts set forth below, there is probable cause to believe that SMITH committed the TARGET OFFENSES.

5. The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## BACKGROUND

*UI Framework*

6. The U.S. Department of Labor's UI programs provide unemployment benefits to unemployed workers who meet certain eligibility requirements. UI is a joint state-federal program that provides cash benefits to eligible workers. Each state administers its UI program, but all states follow the same guidelines established by federal law.

7. While eligibility requirements vary among states, a worker typically qualifies if: (1) the worker is unemployed through no fault of the worker, meaning that the separation from the job is due to a lack of available work, (2) the worker meets time-worked and wages-earned requirements, and (3) the worker meets any additional state requirements.

*Massachusetts UI*

8. Massachusetts UI benefits are funded by the UI Trust Fund, which is in turn funded by federal funds and state-imposed taxes on employers. The Massachusetts Department of Unemployment Affairs ("DUA") administers the Massachusetts UI program.

9. Private, for profit, employers in Massachusetts are required by law to submit quarterly employment and wage detail reports to DUA. DUA then calculates UI contributions, which are made quarterly to the state UI Trust Fund. For a claimant to be eligible to receive UI benefit payments from the UI Trust Fund, a claimant's Social Security Number ("SSN") needs to be reported by an employer to DUA in the quarterly employment and wage detail reports.

10. When a claimant applies for UI, the claimant must first create an online account. Creating a UI online account requires that the claimant review eligibility requirements, approve the data privacy authorization, and provide personal information, including:

    a. Their SSN, date of birth, phone number, email address, residential address, and mailing address.

  b. Their employment history, such as their former employer's name and address, the reason for their unemployed status, how many hours they normally worked in a week, and the start and end dates of employment.

  c. The effective date of the UI claim, any other types of employment, and whether the claimant applied for UI in another states.

11. In the "Claimant Authentication" section, the claimant's SSN, date of birth, gender, and legal name must be entered for verification. The claimant is then prompted to create a password and select a security question and answer. Once the online account is created, the claimant enters contact information in the "General Information" section. A claimant may choose to receive correspondence from DUA in hard copy or electronically. In the "Payment Options" portion of the "General Information" section, the claimant is informed that they can choose to receive UI benefits via direct deposit or debit card, and that the first payment will be made via paper check.

12. Prior to submitting the UI claim, the claimant also must certify, "under penalty of perjury, all information provided is as complete and accurate to the best of my ability."

13. UI claims submitted to DUA are processed via a server in Massachusetts. UI claims are frequently submitted via the internet, and I understand that individuals who submit UI-related information to DUA, via the internet, cause wires to be transmitted to and/or from this Massachusetts-based server.

14. DUA's UI system tracks activity associated with each registered account, including the IP addresses assigned to electronic devices used to initiate activity on accounts.

*Federal and State Pandemic Responses*

15. On March 27, 2020, the federal Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was signed into law. The CARES Act provided additional

funds for traditional UI programs and created a new temporary federal unemployment insurance program called Pandemic Unemployment Assistance ("PUA").[1]

16. DUA administered the Massachusetts PUA program.

17. In response to the Covid-19 pandemic, DUA took measures to speed up the process of paying out UI benefits, including by reducing its fraud protection measures. For example, DUA historically required a one-week waiting period before paying UI benefits to allow DUA to verify eligibility with both the applicant and former employer. In response to COVID-19, DUA temporarily eliminated the one-week waiting period. DUA also made a change to the initial manner of payment. DUA's traditional fraud protection measures required that the first UI payment be made via paper check mailed the applicant. In response to COVID-19, the DUA eliminated the paper check requirement.

18. State unemployment agencies, including DUA, typically require a claimant to provide an email address in connection with their unemployment claim.

## PROBABLE CAUSE

*SMITH Background*

19. SMITH is a 28-year-old resident of Michigan.

20. The investigation identified SMITH's phone number as (313) 909-0771 ("SMITH's phone number"). The investigation confirmed SMITH's phone number through, among other methods, a review of T-Mobile records listing SMITH as the subscriber.

21. The investigation identified SMITH's address as 35330 Van Born Road, Apartment 201, Wayne, Michigan ("SMITH's address") through, among other methods, U.S.

---

[1] PUA provides unemployment insurance benefits for individuals who are not eligible for other types of unemployment benefits (*e.g.*, the self-employed, independent contractors, or gig economy workers). PUA provided payments for these benefits beginning on or after January 27, 2020 and ending before December 31, 2020, for a maximum period of 39 weeks. On or about December 27, 2020, recipients of PUA were granted 13 weeks of Extended Benefits. The American Rescue Act has now further extended PUA benefits through September 4, 2021.

Postal Service records and information obtained from the Michigan Department of Motor Vehicles.

22. IP address 68.41.206.111 ("the 68 IP address") belongs to Comcast Cable Communications, LLC ("Comcast"), and Comcast records reflect that the 68 IP address is subscribed to by SMITH, listing SMITH's name, address, and phone number. Multiple UI claims have been submitted in SMITH's name from the 68 IP address.

23. SMITH has a PNC Bank account (last four 6026) and a Metabank account (last four 5882), both of which have been used to submit fraudulent unemployment claims.

24. SMITH has used and controlled the email account ROLEX1237@mail.com ("SMITH's email account"). A review of the contents of SMITH's email account demonstrate that SMITH has used the account between approximately 2019 and 2021 to handle personal affairs. For example, SMITH's email account contained a September 2109 demand letter directed to SMITH at SMITH's address requesting rent payments. As another example, in March 2020, SMITH used SMITH's email account to submit an unemployment claim in his own name in Michigan. Further, on multiple occasions, SMITH used SMITH's email account to process financial transactions through Venmo and Plastiq.[2]

25. As described in more detail below, SMITH also used SMITH's email account o obtain commercial goods using stolen credit card information and submit fraudulent unemployment claims.

*SMITH's Use of Stolen Credit Card Information*

26. A review of the contents of SMITH's email account shows that SMITH used the account to purchase commercial goods using the names and credit card information of third

---

[2] Venmo and Plastiq are mobile payment services that allow users to send or receive payments electronically. Both Venmo and Plastiq require users to provide an email address to open an account.

parties and ship those goods to SMITH's address.

27. For example, in an eleven-day period in July and August 2019, SMITH purchased commercial goods using the credit card information of three different individuals and had those goods sent to SMITH's address.

a. On July 20, 2019, SMITH used the name and credit card information of a third party (M.B.) to spend approximately $300 on clothing at the Men's Warehouse online store. SMITH used M.B.'s billing information to pay but had the goods sent to SMITH's address. The following is a portion of the email SMITH received:



b. Three days later, on July 23, 2019, SMITH used the name and credit card information of another individual (D.R.) to spend over $150 at the DICK'S Sporting Goods online store. SMITH used D.R.'s billing information but had the goods sent to SMITH's address. The following is a portion of the email SMITH received:

6



28. Approximately seven days later, on August 1, 2019, SMITH used the name and credit card information of yet another individual (C.D.) to purchase a $700-bottle of alcohol at the Reserve Bar online store. SMITH used C.D.'s billing information but had the goods sent to SMITH's address. The following is a portion of the email SMITH received:



We've received your order

ReserveBar <support@reservebar.com>
To  rolex1237@mail.com

If there are problems with how this message is displayed, click here to view it in a web browser.
Click here to download pictures. To help protect your privacy, Outlook prevented automatic download of some pictur

Total                           $708.03 USD

Customer information

Shipping address
Devin Smith
35330 Van Born Road
Apt 201
Wayne MI 48184
United States

Billing address
C        D
Dexter MI 48130
United States

29. Based on my training and experience investigating financial frauds and identity theft, I understand that a common method of using stolen credit card information is to purchase an item online using the stolen credit card information and have the item shipped to an address controlled by the fraudster.

*SMITH's Fraudulent Unemployment Claims*

30. On approximately August 11, 2020, a Mississippi UI claim was submitted in SMITH's name. The claim was submitted from the 68 IP address and listed SMITH's address and SMITH's email account. On approximately August 18, 2020 (seven days later), a West Virginia UI claim was also submitted in SMITH's name. As with SMITH's Mississippi UI claim, SMITH's West Virginia UI claim was submitted from the 68 IP address and listed SMITH's address and SMITH's email account.

31. UI claims in Nevada and Michigan were also submitted in SMITH's name from the 68 IP address. Both claims also listed SMITH's email account. The Nevada UI claim directed payments to SMITH's PNC Bank account and the Michigan UI claim directed payments to SMITH's Metabank account.

32. The investigation also identified two PUA claims submitted to Massachusetts DUA in SMITH's name on approximately September 13, 2020. One PUA claim directed payments to SMITH's PNC Bank account and the other claim directed payments to SMITH's Metabank account.

33. A review of PNC Bank and Metabank records also reveals that SMITH has been using both accounts to receive Rhode Island UI benefits since at least June 2020.

34. SMITH has lived in Michigan from 2020 to present, as SMITH himself would have attested to in his Michigan unemployment claim, and therefore is not entitled to unemployment benefits from states other than Michigan.

*SMITH Submitted Fraudulent Massachusetts UI Claims in Others' Names and PII*

35. Shortly after the CARES Act passed, the DUA alerted DOL OIG of numerous suspicious Massachusetts UI claims that were submitted using common IP addresses and out-of-state mailing addresses, including the 68 IP address and SMITH's mailing address. Specifically, the investigation identified twelve UI claims submitted between March 22, 2020 and April 2, 2020 from the 68 IP address and listing SMITH's address as the mailing address for payments. These claims were submitted in the names and PII of individuals other than SMITH.

36. According to T-Mobile records, within the same time-period, on March 31, 2020, SMITH's phone made three calls to (858) 898-7292, which I understand to be a Bank of America's customer service line for Massachusetts DUA prepaid debit cards.

37. Between March 25 and March 31, 2020, multiple other UI claims were submitted from the 68 IP address directing payments to two addresses within several miles from SMITH's address.[3] Based on my training and experience, I understand that individuals committing UI fraud will often receive mail at multiple locations close to their residence in an attempt to evade detection.

38. The investigation identified other commonalities among the claims submitted from the 68 IP address. In each instance, the "claimant" submitted the claim online, claimed eligibility based on COVID-19, requested the mailing of a Bank of America debit card to receive the UI benefits, listed a residential address in Massachusetts, and listed a mailing address in the Detroit metro area. Other commonalities were also identified among individual claims. For example, in response to a security question about the claimant's city of birth, multiple claims provided the same response ("born").

---

[3] The two addresses are 1421 and 1427 Stacy Drive, Canton, Michigan ("the Stacey Drive addresses").

39. Based on victim interviews and open-source research conducted as part of the investigation, multiple "claimants" on the UI claims discussed above are not unemployed and/or living in Michigan but are instead practicing medical professionals living in Massachusetts.

*SMITH Submitted Fraudulent Claims in Others' Names and PII in Eight Other States*

40. In addition to the fraudulent Massachusetts UI claims and the other fraudulent unemployment claims in SMITH's own name, the 68 IP address was also used to submit approximately 88 claims in other states, including Arizona, Indiana, Michigan, Minnesota, Mississippi, Nevada, Washington, and West Virginia. According to DOL records, those claims have paid out approximately $275,000 in benefits.

41. For example, on approximately May 22, 2020, a Michigan unemployment claim was submitted in the name and PII of J.M. The claim used SMITH's Metabank account and SMITH's email account, both of which were used on SMITH's own Michigan UI claim (discussed above). According to information available to law enforcement, J.M. is a real person living in Washington State.

42. Other claims submitted from the 68 IP address did not provide bank account information, but instead requested that payments be mailed to SMITH's address.[4] For example, on March 21, 2020, a Minnesota unemployment claim was submitted from the 68 IP address in the name and PII of S.A. The claim used SMITH's email account and directed payments to be mailed to SMITH's address. According to information available to law enforcement, S.A. is a real person living in Minnesota.

---

[4] The investigation identified fifteen UI claims in states other than Massachusetts directing payments specifically to SMITH's address, including from Washington state, Michigan, Mississippi, West Virginia, and Minnesota, accounting for approximately $50,000 in payments.

10

*SMITH Continued Fraudulent Activities*

43. A review of SMITH's email account reveals that SMITH has continued to commit unemployment fraud in recent months. For example, on July 26, 2021, SMITH received the following email from DUA relating to the claim of a third party (D.B.):



To  rolex1237@mail.com                                   Mon 7/26/2021 1:54 PM

Dear D▮▮▮ B▮▮▮▮▮

You have **time sensitive** correspondence waiting in your **UI Online Inbox** that may require a response.

Failure to respond to time sensitive requests for information may result in a loss or denial of your unemployment benefits.

To view the correspondence, log into your UI Online account at:

www.mass.gov/DUA/UIOnline

To access correspondence, select **'Claimant Inbox'** from the Claimant Home screen. Then, select 'Search' to find and view the correspondence.

44. DUA records reflect that the UI claim of D.B. for which SMITH is receiving correspondence from DUA has been flagged for fraud.

11

## CONCLUSION

45. Based on the information described above, there is probable cause to believe that that SMITH has violated the TARGET OFFENSES. A warrant for his arrest should issue.

Sworn to under the pains and penalties of perjury,

*Christina Rosen*
Special Agent Christina Rosen
U.S. Department of Labor
Office of Inspector General

Sworn to by telephone in accordance with Fed. R. Crim. P. 4.1 on Oct 27, 2021

*Judith Gail Dein*
JUDITH G. DEIN
United States Magistrate Judge